We've got one case on the docket today. It is Grand Union Supermarkets v. Lockhart Realty. And we'll hear from counsel now. Good morning, Your Honors. Good morning. My name is Greg Hodges. I'm with the law firm of Dudley, Topper & Piersig, LLP. I'm here on behalf of Lockhart Realty, Inc., formerly known as H.E. Lockhart Management, Inc., which, with your permission, I'll refer to as HELM during the course of my argument. With your permission, I'd like to reserve ten minutes for, excuse me, five minutes for rebuttal. That's granted. This case shows what serious deformities can result from the misapplication of the law of restitution and unjust enrichment. Here we have what amounts to a dispute over the validity in terms of a mediated settlement agreement and release set loose into what the restatement third of restitution and unjust enrichment describes as, at worst, an open-ended and potentially unprincipled charter of liability. Well, let's try to first dig in, if we can, to what is the competing sense of equities which you both put on the table here. And you help me out, if you would, please, Mr. Hodges. The position that your opposing counsel has taken is that this was a clear case of HELM trying to collect twice, secretly settling with one party, getting $2.7 million, which by a remarkable coincidence just happens to be the sum of money that was the value of the Pueblo lease purchase arrangement, pocketing that, and then arranging to get the land back from Grand Union so that they could have their cake and eat it too, which is obviously abhorrent to the law. That's the way they posed the case. Now, I want you to explain where's the flaw in their description of your client trying to get both the money and the leasehold back? Well, it is true that we got the money and the leasehold back. And that's not a double recovery? No, Your Honor. That's not having your cake and eating it too, is there? No, Your Honor. And here's why. The lease, at least in our view, take a look at their complaint first. Their complaint at paragraph 10, they don't even, they're not even asking for the return of the value of the lease. What they asked for in their complaint was to be, to recover whatever amount that they're required to pay to National Union under their indemnity agreement. So this whole value of the lease kind of developed when they suddenly realized, well, it has to be something that we gave instead of somebody else. And it's certainly our opinion, or our view, that the lease didn't possibly have any worth like $2.7 million. But it's undeniable on the record, isn't it, that you collected the insurance monies for the land and got the land back? No, we collected the insurance. Keep in mind, we had a separate claim against National Union for fraud, conspiracy, et cetera. But the bottom line is we got the funds to rebuild the building or the property from National Union. And then we went to settle the rest of our claims, which were not insubstantial. I'm not suggesting you didn't make claims. In fact, one of the things that you were in response to their claim of fraud was that there was no raise to CAUDA, excuse me, no claim preclusion, issue preclusion. Or excuse me, you point out that there is issue preclusion, and you won on that, right? Yes, Your Honor. Right, okay. And you continue to think that was error, right? I think that it was correct that the court determined that they were precluded from pursuing their fraud claim based on the dismissal of their identical fraud claim up in New York. That claim was dismissed by the district court? Yes, Your Honor. All right, and there's been no appeal from that dismissal? Absolutely none. Let me ask you something. What is your response to Grand Union's contention that state fitters involve nothing more than a proximate cause scenario as adjudicated by the Third Circuit? Well, the cases that have applied it, certainly the cases that we've cited in the brief, don't limit it to proximate cause. Basically, if there is a dismissal of the tort claim that the unjust enrichment claim effectively relates to and relies upon, then the unjust enrichment claim has to go with it. And that's what Steam Fitters says, and that's what Boarding v. Google effectively says, and that's what, excuse me, Galt, Judge Gomez's decision, the Galt Capital case that we cite. There's a more recent case out of the appellate division of our court, September 23, 2011, Delta Electric v. Biggs, where, citing Steam Fitters, the appellate court affirmed the dismissal of an unjust enrichment claim where, like here, there was an underlying contract. If there's no tort claim, there can't be any claim under tort for adjusted enrichment. That's right. Exactly, Your Honor. And Mr. Glauber, when pressed, keep in mind, their claims have been kind of a moving target from the get-go with 2001. But when Judge Sanchez pressed Attorney Glauber at trial, well, what are you proceeding under? What are you proceeding under? And Attorney Glauber said, tort, tort, tort. So, you know, there's no question that that's the choice that Grand Union made. What is your best argument that your client actually tried to conceal the settlement with National Insurance? What's it called? National Insurance. National Union? National Union Insurance. Their claim is that you hid, secreted, you know, played tricks with them not to let them know that you settled. Well, first of all, Your Honor, I would point out that Attorney Benz, who's sitting here, was counsel of record at the time we mediated. She was counsel of record for National Union. She had entered an appearance for them. In fact, in … We're aware of that from the record. Okay. And if we wanted to hide it, we would have simply not sent them the notice of dismissal until after the mediation. Well, that's part of their claim, that you waited until after the mediation. Then you mailed it out. I forget the date. Well, actually, yeah. I mean, wasn't there evidence that someone told their secretary, hold on to it, drop it in the mail, fax it, don't … Absolutely no evidence whatsoever. Where Judge Sanchez got that from was the argument of counsel. But the district court, whether you think he should have accepted it or not, the district court accepted it as a fact, that your client timed the message deliberately to keep the mediation from having … anybody in the mediation from having awareness of that, right? Well, there was no facts shown in the record. What shows is that the notice was dated March 1. There's no question about that. And that is the date that National Union and Helm settled their or consummated their settlement, and that it was mailed on the 3rd, and that it was received on the 5th. I want to pursue with you, if my colleagues will indulge me, some further questioning about this ruling about issue conclusion. And I apologize. I misspoke earlier. The position that you've got, of course, is that the ruling that it's precluded is correct. You are all in favor of that. But explain to me what it is in the New York court's decision that speaks to whether Helm did anything to hide this settlement and whether Helm had some responsibility to disclose the settlement. It did not address Helm directly. It addressed National Union. Okay. So if the relationship between National Union and Grand Union is what the New York court spoke to, and the facts surrounding their relationship, how could that ruling be dispositive of whatever duties and obligations and deliberate misleading may have gone on between Helm and Grand Union? Well, it was the very same theory that they alleged against National Union that they're alleging against us. Different facts, right? I understand. Different facts, aren't they? I mean, National Union wasn't in the mediation, right? That's correct. Okay. So how could a New York court say what did or didn't happen? I understand their theory to be, among other things, that the behavior in the mediation was calculated to deceive, to lead Grand Union to believe there was a global settlement when there wasn't. How could the New York court possibly opine on that? Effectively, I would submit, Your Honor, that if Grand Union's own insurance company, which often has fiduciary duties, but if their own insurance company didn't have a duty to disclose, then how can an adversary that has no contractual relationship whatsoever have that duty? It simply makes no sense. Because even people with no fiduciary responsibility are not entitled to actively and deliberately mislead one another, right? That's just plain old fraud. I don't have to have a special relationship with you for the law to frown on my doing something to deceive you, which is the basis of their allegation, the ones that were dismissed, that you fraudulently did something which was calculated to deceive them. Had it come out, things would have gone differently. So I put it to you again. How could the New York court possibly have said anything relevant to what your behavior was at the mediation that might have fraudulently deceived the other side? I think what the New York court focused on, which I think is the most compelling evidence in this case, is the disclosure, the notice that Grand Union had from National Union when it sent that letter on December 16, 1998, which is truly astounding. Even in the redacted version, there can be no question, once you receive that letter, that National Union will be negotiating with Helm separately and resolving its claims. That's exactly what they said they were going to do, and that's what they did. With the release, let's turn to the release for just a moment. How does the release... Excuse me. Why don't we add two minutes on to both sides' argument? Would you agree, and I take it from your briefing you would, that the only attack they can legitimately make on the release is that it was obtained by fraud, but fraud was out of the case, so the release stands? That's our position, Your Honor. They attempted now, after the trial, or they're trying to rely on mistake, which we submit they can't do. But, yes, they were attempting to rely on a fraud theory. There is no evidence of fraud, none whatsoever. In my humble opinion, the only thing they have is this mailing of a notice that was sent on the 3rd that they received on the 5th. There's no question. They don't deny that they knew of the settlement before they signed the release and sent it back to us. There's no denial of that. If you look in the record, the only thing they claim they didn't know was on March 4th. They don't deny that they knew it on March 5th. In fact, the correspondence between now Governor DeYoung and Mr. Katsimatis that followed the mediation, DeYoung said it was our understanding that before you signed it and returned it back to us, you knew about it. And Mr. Katsimatis did not deny it. Well, didn't he specifically say he was reserving the rights of his company, that he was going to abide by the settlement until a court decided otherwise, but that they were reserving their right to go and try to unwind this? He said that, but he did not do that. He said, I'm going to take the high road. I'm going to live by my agreement, and I'm not going to do anything until a court order says otherwise. But what did he do? Right when the special limitation is about to run, he files a lawsuit without getting an order, never got an order rescinding the release, never asked for an order rescinding the release. So effectively what he's saying is, let me have my cake and eat it too. I want the deal that we struck on March 4th and 5th, leave it in place, give me all the benefits that flow from that, but let me sue you for damages without seeking rescission. And that is simply, there's no case that I'm aware of that allows that. I just want to roll back just one minute. When Judge Moore issued his order on the fraud claim, obviously there's no mention of this unjust enrichment claim. Was it argued at the same time and just not dealt with? Your Honor, going back a long way, I can't recall. I believe that the unjust enrichment may not have simply been brought up at that time, but I'm not quite sure. There's nothing in the record before us that reflects that it was before the court at that time. That's correct. I think it was before the court was the fraud claim, and by reason of collateral estoppel or issue of inclusion, I guess. The fraud claim and the breach of duty of good faith and fair dealing were dispensed with by Judge Moore in that ruling. And although you were not a party to that, certainly you were in privy with the parties that worked in that lawsuit. To the National Union, yes, Your Honor. I mean, the issue there was exactly the same as the issue here. Absolutely. And you're in privy with the National Union who resolved the case. That's correct. We had, in fact, at the time, we had a claim pending against them that obviously was ultimately resolved by our settlement of the claim with National Union, which recognized in that release and agreement recognized our third-party beneficiary status under the policy. Yeah. Okay, so they knew that there was a claim against National Union at the time they settled the case. Absolutely. Absolutely. And that they were the indemnitor of the insurance company. Yes. Judge Callum, they were both represented by the same counsel at that time. They had a joint defense against our client. National Union, while represented by the same attorneys for Grand Union, denied our claim. They ultimately got our district court lawsuit dismissed. Justice Judge Moore dismissed that for absence of an indispensable party. That was on November 23, 1998. And then on December 22, we filed the lawsuit in the territorial court, December 22, 1998, against National Union, Grand Union, Red Apple. But what's important is that December 16 letter. That's six days before we filed the lawsuit naming them all. And in that letter, they again say, hey, we are tired of dealing with you. We're disassociating ourselves from you altogether. And we're going to deal with them. And if we pay them, we're going to hold you responsible under the indemnity agreement. This case resolves, unless I'm missing a boat here, on whether or not you concealed the settlement that you affected. Is that correct? No, Your Honor. I think it resolves on legal issues as, for example, seeing fitters, obviously, but we submit that the very fact that they never sought rescission of the settlement agreement and release and have accepted the benefits to this date precludes them from seeking unjust enrichment. That's just as a matter of the law of unjust enrichment and restitution. Your claim is that they're right if any is under the contract. And because there's no evidence of fraud, they have no right to sue for unjust enrichment. Their claim is under tort. Absolutely, Your Honor. And any right they have would be ex-contract, too, as they say in contracts. Until, unless and until they rescind that contract, they can't pursue unjust enrichment. And let me tell you why they don't want to rescind it. Well, they'd have to give back what you gave them, in effect. Or they'd have to give back what they gave us. But keep in mind, they sued us in 2001. This case started in 2001. There were still three years left on that lease when they sued. What were they going to do? If they sought rescission and lost, obviously they were stuck with the deal. If they sought rescission and won, what would they get? They'd get a lease with a term of three years left on a pile of rubble with an obligation to rebuild and to pay rent and to pay taxes. And a continuing lease for another 20, 30 years. No, sir. Well, I mean, that was contingent. They never had that. That deal that allegedly supported the $2.7 million valuation, first of all, was terminated in 1997. Mr. Katz-McKitties acknowledges that. It was terminated in 1997, two years before our mediation. And that agreement was contingent on three very important things that never happened. A, they had to rebuild the property in accordance with the new code. They don't dispute that. They had to fixture it. They don't dispute that. And they had to convince my client to give Pueblo either an extension of the existing lease or a new 25-year lease with the last 15 years at the sole option of Pueblo. All right. Thank you, counsel.  Thank you, Your Honor. Now, counsel, you're facing a couple of things. One is, as your adversary put it, you want to have your cake and eat it too. Plus, you've got a release here, two sophisticated parties. How are we getting around that? I hope you're going to be addressing that in your argument. Well, I'll address that right off, if you can hear me, Your Honor. First of all, in terms of the have-your-cake-and-eat-it-too approach, we paid National Union – well, Red Apple paid $1.5 million to National Union. That $1.5 million was debited to Grand Union on the books, and Grand Union's recovery here is obviously subject to that lien, if you will. So this is not strictly a have-your-cake-and-eat-it-too proposition. The other question related to the release. Well, first of all, we did argue, and there was a jury instruction on whether the release should be enforced in the context of this case. The jury heard all these arguments and rejected them. But did that have to go to the jury? Well, no. Actually, it did not have to go to the jury because the release didn't apply in the first place. If you actually take a look at the release, there are a couple of phrases in there. There's the including but not limited to phrase. Right. And then there's – There's also relating to, which is pretty broad language. Yes, but that goes – it goes rising out of and relating to – The lease. The lease, including – it doesn't say at that point including but not limited to, as it did just sentences before. It says including any claims that were or could have been asserted in the two litigations. Now, isn't it fair to say, read that release in its totality, that the parties were trying to wrap up this whole thing and say goodbye to each other and go their own ways? Well, they were selling us a global release and – And you bought it. And we bought it, and we bought it, and they got it twice. Okay, well, the first question I ask you is how can there be a fraud case, even argued here, a fraud claim? It was dismissed in the district court. You didn't file any cross-appeal. So as far as a work concern, why should we even consider any fraud before the court at this time whatsoever? Okay, well, I'll ignore for the moment the argument about the nondisclosure and go with the fraud. Well, that's part of the fraud situation here. No. That was tried before the New York case. The exact same issue that's here was before the New York court. It was resolved against you. Although Held was not there, it's unquestionably they were in privy with them, and that the New York court held that there was no fraud, lack of concealment. There was no concealment here. Well, I'm not sure I follow that they were in privy, number one. We actually were the insured under the policy. Number two, the issue being resolved in the New York court was whether they were a fiduciary of ours. At least that was what was resolved on appeal. Certainly, the lower court in New York went off on both the fiduciary duty and the superior knowledge aspect. How could they be any more fiduciary than you had in the New York court? At the very least, they are less of a fiduciary. They were your adversary, lone boys at arm's length, well represented by both parties, with your eyes open. Your client knew that that claim was filed and pending, and they didn't owe you any duty to tell you whether they would have settled or not. You knew it was pending. Well, first of all, we didn't argue that they were our fiduciary. That's certainly true, Your Honor. But under the lease, we were the parties under the lease who were entitled to the payment of the insurance proceeds. And, in fact, in their earlier litigation, they affirmatively represented that to the federal judge, I believe, or maybe it was the territorial judge. Helm 1 was in two places. So they were not a fiduciary. We're not arguing that. What they were is there was an obligation for that money, for those monies to come to us. We went into this settlement negotiating, asking for a global release that covered a national union, which they had already sold. They said nothing, remained silent. Well, what obligation did they have to tell you we're going to settle the case, we're going to settle the case? You knew that they had the case pending. And it's none of your business. You never asked them. Your Honor. There's nothing in this record that before you signed up, you said, by the way, there's a case pending which we may have to indemnify the insurance company. Have you settled it? There's nothing in this record. You asked them. That is correct. We did not ask them. There's nothing in the record that we did. So where's the fraud? Even if the fraud case was before this Court, which I have some doubts on whether it can even be before the Court. I understand. Suppose it was before the Court, hypothetically. Where's the fraud? What duty do they have to tell you what they're doing in their suit with national, whatever it's called, insurance, national union, national union insurance company? Well, the duty, if we're sticking on the fraud point, arises under 551B, 551 of the restatement. I can't remember the exact sections. 551 deals with a, you know, quasi-contracts, an unjust enrichment. If there's a tort claim in existence or a ex-contract due, if there's a contract type, quasi-contract claim. Here, you have a contract with them. Any rights that you have or defenses that they have are strictly under the contract. We don't go under quasi-contract when there's an actual contract in existence. Well, the, in this particular instance, we had a reservation of rights. We asserted that the release did not apply. We asserted that we had. You've jumped ahead. Excuse me? I think you've jumped ahead. The question that's being put to you is what obligation did they have to tell you anything, particularly when you were clearly on notice that they were negotiating separately with National Union, because National Union had told you so? Well, the obligation arises in the context of, again, 551 in the nature of misleading, ambiguous statements that were effectively being made during the course of the mediation. What's misleading and ambiguous about parties at arm's length talking to each other about settling a case when both parties are aware that there's another outstanding dispute and both parties are aware that the party across the table, that is Helm, is speaking to National Union? You knew it. You knew it going in. You never addressed it. Why are they responsible to hold your client's hand and say, let me tell you everything that's going on over there? Two things. With respect to – I had two things. I feel like I'm running for president. Take your time. In any event – Well, your client had a sort of an oops moment. Okay, fair enough. One, this is an argument on reasonable reliance, effectively, which was argued to the jury. They had full opportunity to argue that whole point, and the jury rejected it. Your adversary's position never should have gone – that's the question before us. It never should have gone to the jury, says your adversary, because it was foreclosed by collateral estoppel. In addition, there was no evidence from which a reasonable jury could conclude that there was any fraud. And secondly, thirdly, you've got steam thinners, which you say doesn't apply here, but why doesn't steam thinners cover this four square out? I'll address that in a second. Just to get back to the second point, which was we cited in our brief a couple of ethical opinions from the ADA and the PA bar indicating that in certain circumstances in settlement negotiations where one party knows of certain situations that they have a duty to disclose. And we also cited comment L, I believe, of Restatement 551 concerning duty to disclosure in business transactions. But turning to steam thinners, steam thinners does not apply for two reasons. And Allegheny General as well. Allegheny General. These are cases that involved proximate cause, and they went off on proximate cause. And if you don't have proximate cause for any tort claim – They didn't just go off on proximate cause. The language of the Supreme Court is pretty direct. If you don't have an underlying tort, you can't resurrect your claim by dressing it up in a different suit and calling it unjust enrichment. Isn't that – I mean, they say it in a language that's practically that clear. Well, they say it in the context of proximate cause, so I respectfully would disagree. The second – They don't limit it to proximate cause at all. And certainly there have been a number of cases since then that have taken the approach that's been adopted by – Doesn't common sense just tell us we can't – we really shouldn't be countenancing a claim dressed up in a different way? I mean – Well, which is the only way to say it. I'm sure it would be an excellent argument, I thought, about that, that this has already been decided, basically. Well, going to the second point here, under the – what was actually the jury was instructed on, which Judge Finch decided, was the concept of a nondisclosure that is material, that is an inducing cause, can give rise to an unjust enrichment claim, even when there is not a fraudulent, misrep, fraudulent – How do you get there? How do you get around Steve Farris? Well, first of all – I'll just give you a quote. This is our court, excuse me, not the Supreme Court. In the tort setting, an unjust enrichment claim is essentially another way of stating a traditional tort claim, i.e., if the defendant is permitted to keep the benefit of his tortious conduct, he will be unjustly enriched. That's our court saying, flat out. It's just saying the same thing with different words. So what's your way around that? Well, I guess what it's saying is there's no such thing as an unjust enrichment claim involving tort. So the way – a way around that – No, no, they say there could be an unjust claim as long as there is a tort claim. That's what they say. Well, effectively, you're going to have the recovery under the tort claim. So – Well, yeah, but – So if you don't have a tort claim under Steve Farris, how can you have an unjust enrichment claim consistent with Steve Farris? Well, we have an unjust enrichment claim under Section 9 and Section 8 of the Restatement of Restitution. That seems to just not answer the question at all. Well, it's not a – you can look at it as not a tort claim. Well, you're looking at it – if you're not looking at it as a tort claim, you're looking at it as a quasi-contract or contract claim, correct? It could be looked at that way, correct. And that's how Judge Fisch looked at it. No, not the way – how do you look at it? It's not a tort claim. Is it a quasi-contract or contract? Well, I think it's an unjust enrichment claim. I think it's an independent cause of action. And this Court in Boring indicated that you had not resolved that. But didn't the below say repeatedly this is a tort claim, this is a tort claim, this is a tort claim? Well, once or twice. But what we also said in that case – well, first of all, as is pointed out in the reply brief, supplemental reply brief of the appellant here, counsel's conception of the legal theory of the case is not binding on the client. And, in fact, if on the facts disclosed the party is entitled to some relief, it's the duty of the court to award it. In fact, during the oral argument – You're still arguing fraud in this Court. I counted like three or four places. I'm going to give you some quotes. Grand Union presented evidence tending to establish fraud by Helm and that Helm concealed the settlement. That's on page 44 of your brief. On page 42, a releaser such as Grand Union can always set up fraud as grounds to ignore a release. Sure. On page 36 of your brief, the Court confirmed on the ground that Grand Union's mistake was induced by Helm's fraud. Not on page 20. Helm actively concealed his settlement and did so with the intent in effect of being paid twice. In other words, fraud. Over and over again, even in this Court, you're still arguing fraud. Your Honor, we'll look at the – Well, is there a fraud claim before this Court? There is a fraud claim and then there's the claim that – How is it to be a fraud claim? You never filed a cross appeal. That got dismissed in the district court. Okay. Well, first of all, let me just touch on – before I address that, let's touch on the argument about fraud. The first argument we make under unjust enrichment is not a fraud claim. It is a nondisclosure of a material fact that induced the – How is that – even as you say that, can't you hear the word fraud ringing around the courtroom? How can you say nondisclosure of a material fact that induced reliance? How is that any different than saying fraud? Look at Comment E of Restatement Section 8, which distinguishes between an innocent misrep and nondisclosure and a fraudulent misrep, concealment, and nondisclosure. And that's where – You've never, ever, even once suggested that there was an innocent misrepresentation by Helm. Your theory in the district court, your theory here, all the way through is deliberate concealment of a material fact. There's nothing in this record to support a claim that somehow they made a mistake and that led you to make a mistake. It's always been about they hit the ball on purpose to trick us. Absolutely. That was the argument. But if it wasn't that, then it was a nondisclosure that fits into Restatement 8. There's no evidence of that. I mean, even if that were your claim, there's no evidence to that at all. All your evidence was they misled us. Well, the evidence within that was the evidence that there was a nondisclosure of a material fact. That's subsumed. Is that a tort or just an unjust enrichment claim? It's an unjust enrichment claim. Well, the problem I'm having with that claim is, initially, assuming for the purpose of this argument that there is no fraud claim before the court, unjust enrichment, all these claims under 551 Restatement under equitable concepts require that there be either a tort claim, which is not here, or a contract quasi-contract claim. You don't have a quasi-contract claim here. Any contract claim you have is under the contract. And so I don't perceive how you can claim unjust enrichment is not a freestanding tort or claim. It's a procedure. If you have a claim which is legitimate under quasi-contract or under tort, then we bring in concepts of equity under unjust enrichment and so forth. But without a dog to attach the tail to, there's no claim. Now, you have no tort claim, and certainly you have no contract claim here. You have a quasi-contract. Your claim is, as far as I can see, tell me where I'm wrong, is under contract or under tort. Tort is not before us if we rule in favor of your adversary. And how can you have an unjust enrichment claim when you've never argued quasi-contract? Well, again, Your Honor, whether you say it's contract-based or fraud-based, that's really not the point. Well, what is the point? I mean, there's got to be something for unjust enrichment to attach to. And it's either got to be a contract, it's got to be a quasi-contract, or it's got to be a tort. Well, I would say this with respect to- Excuse me a minute, counsel. Your adversary got a few extra minutes. Margaret, let's give him three extra minutes to make his arguments. Go ahead. The position of the Grand Union throughout was that it was not subject to this release that it had negotiated, that it had given up not just the lease itself but that-well, let me step back. An unjust enrichment claim does not necessarily have to say give me back that piece of property. It can also be a claim give me back the value of the benefit I conferred on you. So to the extent that we're saying that you needed to affirmably say I'm rescinding the delivery of the lease- You're talking about remedy at this point. And what Judge Cowen is pressing on, I think, and I'd like your answer to is if you don't have a claim in fraud and if you don't have a claim in contract, what can you pin unjust enrichment to? Well, all I can pin it on at that point, Your Honor, is what this court in Boring said had not been decided, which is that there is an independent claim for unjust enrichment. Well, if there is such a claim, in other words, you're coming into the equity side of the court saying that you were dealt down and dirty by the adversary here. If you do have such a claim, assuming for the record that there is such a claim- I understand. Your adversary says the biggest fraud in the whole case is your client. He was supposed to get insurance, and if he had gotten insurance in the first place under the contract, I wouldn't be sitting here today, which would have been over 10 years ago. Because of the fraud of your client not getting insurance but having this contract of identity, whatever it was, with the National Union Insurance Company caused the-that's his briefing posture. What's wrong with that claim? If there is an equity claim here, did you come into court with clean hands? Well, you know, that's frankly a red herring in my view, Your Honor, because we had a self-insured retention, and there was never any question- Let me read you from the lease. The lease says, Tenants shall at all times during the term here of any renewal term, a tenant's sole cost and expense, keep, ellipse, the premises insured for the mutual benefit of tenant and landlord against loss or damage by fire and such other risks as may be included in the standard form of extended coverage insurance in amounts sufficient to prevent landlord or tenant from becoming a co-insurer within the term of the applicable policies. Now, how could your client possibly, in any stretch of good faith, have understood language about extended coverage standard policies and in amounts sufficient to keep them from being co-insurers? How could they interpret that to mean we don't have to get insurance? Do we just have to tell them we've got enough in our bank account, trust us? Well, Your Honor, I believe the ultimate answer on that point is that they- I don't have full command of the record on this particular point, but I believe the answer is that they did try to get insurance, and that hurricane insurance was virtually impossible to get them. Well, they never came, they never went to helm and said, hey, let's renegotiate the lease, we can't get insurance. They just didn't do it. And then when they were caught having not done it, they come up with this cockamamie commercial retroactive insurance policy, something nobody on this planet has ever heard of before, where you get some insurance company to say, sure, we cover you for that risk in the sense that if anybody ever makes a claim against this policy, you're going to pay us and you're never going to make a claim against it. In what universe is that insurance? Well, the National Union did pay. And we paid them against you. And we paid them. Yeah, so that's not insurance. Whatever you call it, it's certainly not insurance, is it? It's a statement that if somebody comes to us on the risk that's already been realized, we'll pay, but then you'll pay us. It's a complete gin up of a document that has no actual insurance value whatsoever. It couldn't have because the risk had already occurred, right? Well, it had value because, in fact, National Union had to pay money. That doesn't mean it had value as insurance. I mean, whatever it was, you couldn't. Well, that's like saying if you go to a restaurant and they give you a bag of sand, it must be food because it came from a restaurant. Just because it came from an insurer doesn't make it insurance. Well, Your Honor, you know. . . You just didn't have insurance, right? I mean, the facts are clear. It was the insurance policy. Yeah. Correct, Your Honor. Right. So you were hoist on your own petard. You didn't have insurance. They were entitled to throw you off the property, and you ran around trying to come up with something that you could call insurance, and all of this flows from the effort of Grand Union to avoid the consequence of the lease it negotiated, right? Well, I'm not sure you could characterize it that way. Would you acknowledge that if you had had insurance as required, insurance as it's known to most of us, if you had had insurance as was required under the contract, that none of us would be here today? The claim would have been paid. There would have been no lease fraud and unjust enrichments. It would have been a claim against National Insurance Company, and there would be nothing here. We would not be here on this ground. That's for sure. Well, it was before the court. So why shouldn't, if there is such a thing as a freestanding unjust enrichment claim, and we adjudicate that you are not coming into court with clean hands because you didn't do your side of the bargain, then what would be wrong with us concluding that you're not entitled to equity, whatever it be, unjust enrichment, these other concepts, because you don't come in here with clean hands? Well, Your Honor, I have not researched it. It's not clear to me that unclean hands would be a defense to an unjust enrichment claim for a money damages award. I just don't know. One last thing. Actually, Judge Cowan asked, and I don't think it's been answered. I'm sorry. We can't reconsider that fraud claim now, can we? It hasn't been appealed. You can reconsider it. First of all, we're not trying to expand. There are a number of levels here, obviously. We're not trying to expand our rights. I know that Judge Cowan, I think, wrote a dissent in the last year on this subject. We're not trying to expand our rights. It was not argued below. You are trying to diminish your adversary's rights, though. You cannot argue a matter unless you've crossed the field, if you're trying to expand your own rights or diminish your adversary's rights. I've seen the former but not the latter, Your Honor. I mean, you can argue to affirm on any basis, certainly any basis that was argued below, but it can also be considered that this Court has the power. Does the Steemfitters issue bring the fraud claim in? Because they're the ones who press and say Steemfitters prevents you from being able to make your unjust enrichment claim, and by definition, Steemfitters is about if there's no fraud, there's no unjust enrichment. So if they bring Steemfitters into it and argue there's no fraud, are they bringing the fraud into the case, which allows you to argue? Of course, Your Honor. That's nice in that softball. All right. Thank you, Ken. Thank you. Thank you, Your Honor. One of the comments that was made earlier about the notice, I just wanted to point out in the record that when asked why he never called National Union before the mediated settlement agreement, Mr. Katsimatidi's response was, it wasn't my job to call it that. So the cavalier way in which they're suggesting that we took advantage of them and not disclosing this settlement agreement is just absolutely astounding. Well, let me ask you about the last point we were talking about with your opposing counsel. You are the ones who bring the fraud issue back into this appeal, are you not, when you argue on the basis of Steemfitters that they can't have an unjust enrichment claim because fraud is out of the case. So by putting that in issue, aren't they absolutely entitled to say Steemfitters shouldn't apply because the fraud claim was wrongly thrown out to begin with? Well, that's ignoring this Court's decision in the Phillips case. How so? How so? You make the argument. Because we weren't able to defend the fraud claim. That wasn't at the trial. How are we going to be able right now when there's no evidence of fraud to be able to defend against that on appeal? But isn't one possible outcome here a statement that the fraud claim was wrongly dismissed? It should all go back. Well, I'm across the field, he's saying. I would respectfully submit that Phillips is absolutely on point. If that fraud claim is reinstated, it certainly expands their right. They're going to be entitled to punitive damages, which they're not entitled to under unjust enrichment. I'm just trying to deal with the appeal here. They did not cross appeal. And what I'm trying to ask you is whether they had to cross appeal to preserve that If the argument you're making is based on and rooted in the notion that there's no fraud in the case, does your decision to press that point on appeal keep the fraud issue alive in the case such that we could properly say, look, the fraud issue is effectively in front of us on appeal, and we're saying there was no issue preclusion. It shouldn't have been thrown out of the case. We're remanding for a new trial, and everything's back on the table. I would respectfully submit not, Your Honor. Okay, that's what I'm trying to get you to answer. Why is that line of reasoning wrong? The line of reasoning that you're assuming that Judge Moore was wrong, I think. That's the problem. Well, not assuming it, I'm suggesting to you that one possible outcome here, if the fraud issue is before us properly without a cross appeal, is the decision that he was wrong. So the question I'm trying to put to you is, without a cross appeal, can we properly look at whether he was right or wrong on the fraud issue, keeping in mind that you have made the fraud issue central to your appeal by arguing steam fitters? I would respectfully submit not, simply because they haven't complied. They don't have an unjust enrichment claim, period. If they had a fraud claim, they would, wouldn't they? Potentially under steam fitters, yes. Well, assume that there is no fraud claim because there's no cross appeal. Assume that. The third position is, whether there is or is not a fraud claim, Section 9.1, I think, of the restatement clearly authorizes the Grand Union to have this unjust enrichment claim. What is your response to their claim that they have it? There's a standalone claim? Yeah, under 9.1. They said there's a standalone claim even though there's no fraud report before us. Well, there's no case in the Virgin Islands that says there's a standalone claim, and to the extent that the Virgin Islands, as it does, follows the restatement third of restitution and unjust enrichment, there is no standalone claim because if you look at the Section 44, Comment A, to the restatement third, it says restitution will sometimes yield a recovery where the claimant could not prove damages, but it does not create a cause of action where the claimant would otherwise have none. And that's the situation here. Your Honor, Judge Cowan, you have kept pressing the same question that the judge in the underlying case. What dog are you going to pin your claim to? And that was a constantly moving target in this case. And they finally said tort, tort, tort at trial, and now they don't want that. They want, well, it's quasi-contract. But when you press them on the quasi-contract, how can you have a quasi-contract claim when there's an unrescinded contract? That's not allowed. Counsel, maybe you could wrap up. Yes, one of the fundamental principles of restitution and unjust enrichment is to consider how you best get folks back to the status quo ante. And I think it would be helpful to look at what was the status quo ante before we were paid $2.7 million by the National Union. At that time, when we walked into that mediated settlement agreement, we had basically a bundle of rights. We had the right to recover for breach of lease, which would include termination and damages. We had claims for rent and taxes of over $150,000. What did they have? When they walked in there, they didn't have really a claim for tortious interference because they acknowledged, we know from history, they now have acknowledged that the Pueblo deal was terminated in 1997, and it wasn't like we were, as they claimed in their complaint, going to steal their deal with Pueblo. That just didn't happen. All right. Thank you, Counsel. We'll take the case under advisement. Thank you, Counsel, for excellent briefing and argument on this challenging case.